HELEN E. COCHRAN, as Administratrix of the Estate of P. O. COCHRAN, Deceased, Respondent, v. STANDARD ACCIDENT INSURANCE, COMPANY OF DETROIT, MICHIGAN, Appellant.*

Kansas City Court of Appeals.   March 25, 1925.

1. INSURANCE: Contract: Construction: Where Terms of Contract are Plain and Unambiguous They Cannot be Changed by Judicial Construction. Where terms of insurance contract are plain and unambiguous, they cannot be changed by judicial construction.

2. ———: ———: ———: Contract Susceptible of Two Different Constructions Will be Construed Most Favorably to Insured. When an insurance contract is so drawn as to be fairly susceptible of two different constructions, so that reasonably intelligent men on reading contract would honestly differ as to meaning thereof, that construction will be adopted which is most favorable to the insured.

3. ———: ———: ———: Construction of Contract Favorable to Insured Must be Natural and Logical. Where there is room for construction of insurance contract it should be as favorable to insured as reasonably may be, but such construction must be a natural and logical one and not a sophistical one.

4. ———: Just Interpretation of Contract Arises on the Whole Subject-Matter. The just interpretation of a. contract arises on the whole subject-matter.

5. ———: ———: ———: Exception in Accident Policy Exempting Insured from Liability for Injuries Resulting ''Under Any Circum-

stances from Firearms'' Construed. An exception in an accident insurance policy which exempted insurer from liability where injuries to insured resulted while engaged in certain occupations, "or under any circumstances from firearms of any kind," *held* not plain and unequivocal in its meaning and under rule of *noscitur a sociis*, liability of insurer was excepted "while the insured was connected in some way with or "engaged in," handling or using firearms, or was in an enterprise where firearms were being used and handled, whereby he was likely to come into dangerous contact with and be injured by them.

6. ———: ———: ———: **Rule of ''Noscitur A Sociis'' Defined.** *Noscitur a sociis* is a rule of interpretation by which the meaning of not merely one word but that of several may be arrived at where there is use or room for construction.

7. ———: ———: ———: **Grammatical Construction Not Followed if a Different Construction Will Give Better Effect to Intention of the Parties.** The grammatical construction of a contract will not be followed if a different construction will better give effect to the intention of the parties as shown by the whole instrument and accomplish the object for which the contract was executed, but rules of grammatical construction are not to be disregarded where they serve to throw light on the intention of the parties.

---

*Corpus Juris-Cyc. References; Accident Insurance, 1 C. J., p. 456, n. 65. Contracts, 13 C. J., p. 527, n. 45; p. 534, n. 60. Insurance, 32 C. J., p. 1147, n. 15; p. 1149, n. 48; p. 1152, n. 95; p. 1158, n. 34.

Appeal from the Circuit Court of Jackson County.—*Hon. Charles R. Pence, Judge.*

AFFIRMED.

*Atwood, Wickersham, Hill, Levis & Chilcott* for respondent.

*Warner, Dean & Thompson* for appellant.

TRIMBLE, P. J.—This is an action upon an accident insurance policy wherein defendant insured plaintiff's husband against the effects of bodily injuries re-

ceived during the term of insurance "effected solely by external, violent and accidental means," and promised to pay $2500 if such injuries should, independently of all other causes, result in death within ninety days.

There is no controversy over the issuance and delivery of the policy, nor over the fact that the policy was in force at the time of insured's death on January 20, 1923, from external, violent and accidental means. It is also agreed that on said date insured was sitting in a seat in a day coach, riding as a passenger upon a train traveling a short distance west of El Paso, Texas, and that while thus sitting, an insane man suddenly and without warning fired a pistol and killed insured, and that insured in no manner caused or contributed to said act or his death.

The controversy arises over the construction and effect to be given to a provision in the policy which provided that it was "issued by the company and accepted by the insured with the understanding and agreement that no benefits will be paid for injuries, resulting fatally or otherwise, received under or in consequence of any of the following conditions:

(1) While on a locomotive, freight-car or caboose used for passenger service or otherwise or while on the platform or steps of any railway-car while in motion; or while entering or leaving, or trying to enter or leave any moving conveyance; or while improperly on the right-of-way or bridge of any railway; or (2) while, or in consequence of being, or having been, affected by, or resulting directly or indirectly, wholly or partly, from intoxicants, anaesthetics, narcotics, sunstroke, freezing, vertigo, sleepwalking, fits or any bodily or mental infirmity in any form, either as a cause or effect, or medical or surgical treatment or operation; or from gas or poison in any form or manner, or contact with poisonous substances; or (3) *while engaged in aerial navigation, hunting, fishing, or in exploring expeditions, or under any*

*circumstances from firearms of any kind, explosives, war or riot;* or (4) from wrestling, lifting, racing, or competitive games, etc. (Italics ours.)

Defendant relies upon the above exception clause No. (3); and asked a declaration of law from the trial court, sitting as a jury, to the effect that if deceased was killed in his seat in the coach by a man suddenly and without warning firing a pistol, then plaintiff could not recover. The court refused to give the declaration and rendered judgment for plaintiff, and defendant has appealed.

The pivotal question in the case is whether the exception clause relied upon is so plain and unequivocal as to afford no room for construction. If the terms are plain and unambiguous, they cannot be changed by judicial construction, for that would be making a new contract for the parties. [Penn v. Travelers' Insurance Co., 225 S. W. 1033, 1034.] "So long as the contract is plain and unambiguous, not open to different constructions, and is so framed as that the insured is not justified in thinking the contract to be something other than it is, it is not within the power of the courts to change it or to make a new contract for the parties by judicial construction." [Taylor v. Loyal, etc., Ins. Co., 194 S. W. 1055, 1057.] But when an insurance contract is so drawn as to be "fairly susceptible of two different constructions, so that reasonably intelligent men on reading the contract would honestly differ as to the meaning thereof, that construction will be adopted which is most favorable to the insured." [Imperial, etc., Ins. Co. v. Coos County, 151 U. S. 452, 462.] Such construction, where there is room for it, should be as favorable to the insured as reasonably may be, but it must be "only a natural and logical one and not a sophistical one." [Rader v. New Amsterdam Casualty Co., 102 Minn. 186, 189.] However, the "just interpretation of a contract arises on the whole subject-matter. It must be viewed from end to end and corner to corner and all its terms pass in re-

view, for one clause may modify, limit or illuminate the other.'' [Mathews v. Modern Woodmen, 236 Mo. 326, 342; Groves v. Great Eastern Casualty Co., 246 S. W. 1002.] So that in construing the insurance contract in the case at bar, we must look at the entire paragraph relating to the exceptions or exemptions. Defendant would have us to construe the policy as if it read ''no benefits will be paid for injuries resulting under any circumstances from firearms of any kind.'' But the exception is not so unequivocally stated, and as said in Cooper v. National, etc., Ins. Co., 212 Mo. App. 266, 274, ''when it is attempted to relieve the insurer from liability for such an (accidental) injury by a clause in the nature of an exception in a policy of this character, it can only be accomplished by language unequivocal in its meaning.'' Examining the entire paragraph relating to exceptions or exemptions from liability, we find they are all stated in one sentence, and the words ''under any circumstances from firearms of any kind'' must not be wrenched from their setting nor from the context in which they are found. Considering then the entire paragraph, it manifestly sets out or specifies various situations wherein the *insured,* by getting into certain relations or enterprises *has increased the hazard or risk* of injury. Now, what would a ''reasonably intelligent man on reading the contract'' and about to accept and pay for the policy, understand to be the meaning of that entire paragraph? He would naturally and reasonably understand that, under exception No. (1) of the policy, it provided no insurance if he were hurt or killed *''while on''* a locomotive, freight-car or caboose, or the platform or steps of a railway-car while in motion, or *''while entering or leaving,''* or attempting to do so, any moving conveyance, or *''while improperly on''* the right-of-way or bridge of a railway; and

That under exception No. (2) no insurance would be paid if he were hurt or killed *''while, or in consequence*

*of being,* or having been, *affected"* by intoxicants, anaesthetics, narcotics, etc.; and

That under exception No. (3) the policy would afford no insurance if he were hurt or killed, *"while engaged in"* aerial navigation, hunting, fishing, or exploring expeditions, or under any circumstances from firearms of any kind; and

That under exception No. (4) the policy would afford no insurance if he were hurt or killed by injuries resulting *"*from *wrestling, lifting, racing* or *competitive games"* etc.

The foregoing are matters which the insurer provides against because they are *extra-hazardous;* and they are things which the insured *can* and *must avoid* if he would have full protection under the policy. All of the exceptions, even the sunstroke, freezing, vertigo, sleepwalking, fits or bodily or mental infirmity or medical or surgical treatment or operation, or gas, poison or contact with poisonous substances, are matters with which insured is *himself* personally *affected,* since the injury must result *"*while, or in consequence of being, *affected"* by them. In other words, since the injury must result *while,* or in consequence of *his* being, affected by such things, they are, so to speak, matters *originating with* and *continuing.* to *inhere* in *him,* and with which he *alone* is immediately and personally connected not only in *origin* but also in *effect.* And the provision relating to firearms, is not only associated in the same sentence with these, but is, in the very clause (3) in which it appears, connected with the words "while engaged in," thus still stronger conveying the idea that it too relates to a matter of extra hazard with which he himself sustains a relation both in cause and effect. Hence insured would understand that the firearms clause, like the others, refers merely to those situations where *he* has increased the risk either by *engaging in* enterprises where firearms are used or by handling or using them himself; and that

he must not *engage* in such enterprises and must *refrain* from handling or using firearms if he would avoid coming within the exemption as to them. Would it ever enter the mind of a reasonably intelligent man accepting insurance under this contract that if he were to go on board a vessel and a cannon should get loose and roll about the deck, as in Victor Hugo's "Ninety-three," and crush the life out of him, his beneficiary could not recover because his death was caused by a firearm? The illustration here used is however more favorable to defendant's contention than the facts in the case at bar, for in the former it could be said that *he* had knowingly *placed himself* in such situation or relation to the cannon that if it got loose from its moorings it might roll against and crush him. Whereas, in the facts of this case, the insured was in no way connected with the use of the firearm nor could he know or apprehend in any way that it would, or was likely to be, used. If defendant's contention be correct, then if insured had been walking along the street and someone had, from an upper story, dropped a rifle upon and killed him, the insurer would be exempt from liability.

The phrase, "under any circumstances from firearms," is used in the same sentence with the provision that the company will not be liable if insured is injured "while" at or in certain places or "while engaged in" other things, and the implication would be that the "circumstances" connected with firearms are of the same kind and character as those with which it is associated. "It is a familiar rule in the construction of terms to apply to them the meaning naturally attaching to them from their context. *Noscitur a sociis* is a rule of construction applicable to all written instruments. Where any particular word is obscure or of doubtful meaning, taken by itself, its obscurity or doubt may be removed by reference to associated words. And the meaning of a term may be enlarged or restrained by reference to the

object of the whole clause in which it is used." [1 Fed. Stat. Ann. (2 Ed.), of Statutes and Statutory Construc- tion, 115.] It is a rule of interpretation by which the meaning of not merely one word but that of several may be arrived at where there is use or room for con- struction. [Brown v. Chicago, etc., R. Co., 102 Wis. 137.] Taking into consideration the entire paragraph relating to the exceptions or exemptions from liability, we think it is open to the construction that the liability of the company was excepted only "while" the *insured* is con- nected in some way with, or is "engaged in," handling or using firearms, or is in an enterprise where firearms are being used and handled, whereby he is likely to come into dangerous contact with and be injured by them. This is the ordinary, natural and most obvious meaning to be gathered from the context of the phrase and from the grammatical construction of the sentence in which it is used. "The grammatical construction of a contract will not be followed if a different construction will better give effect to the intention of the parties as shown by the whole instrument and accomplish the object for which the contract was executed. Rules of grammatical con- struction however are not to be disregarded where they serve to throw light on the intention of the parties." [13 C. J. 534.]

The cases cited by defendant are not deemed to be strictly in point and controlling in the present case. They are cases where the exemption clearly and un- equivocally, and without qualification, applied to death or injury from the causes excepted. Such, for example, are the cases of Bader v. New Amsterdam Casualty Co., 102 Minn. 186; Powers v. Travelers' Ins. Co., 119 S. E. 481; Vanderbilt v. Travelers' Ins. Co., 184 N. Y. Supp. 54; Hawkeye, etc., Assn. v. Christy, 294 Fed. 208; Early v. Standard, etc., Ins. Co., 113 Mich. 58; Taylor v. Loyal, etc., Ins. Co., 194 S. W. 1055 and Penn v. Travelers' Ins. Co., 225 S. W. 1033. In the case last cited not only

did the policy unequivocally provide that if injury or death resulted "wholly or partly from firearms" (1. c. 1034), the company would not be liable, but the insured's death resulted from a firearm which he himself was carrying. In the case of Robyn v. New Amsterdam Casualty Co., 257 S. W. 1065, there was an exemption from liability if injury was sustained by insured "while getting on or off any public conveyance or while being upon the step or steps thereof." There was nothing ambiguous or of doubtful meaning about this, nor was any contention made that there was. The plaintiff's contention necessarily conceded that, for it was sought to show that the injury did not occur under those circumstances. As we view the terms of the policy in the case at bar, the judgment should be affirmed and it is so ordered. All concur.