BIWABIK CONCRETE AGGREGATE COMPANY v. UNITED STATES FIDELITY & GUARANTY COMPANY.[1]

November 10, 1939.

No. 32,156.

[1]Reported in 288 N. W. 394.

240

*Gillette, Nye, Harries & Montague* and *W. O. Bissonett,* for appellant.

*Hunt, Palmer & Hood* and *G. A. E. Finlayson,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Defendant appeals from a judgment in plaintiff's favor.

An action was instituted by Biwabik Concrete Aggregate Company against United States Fidelity & Guaranty Company to recover damages for breach of contract consisting of failure by defendant to settle or defend as required by the terms of a contractor's public liability policy certain claims against plaintiff for damages resulting from a collision between an auto in which the claimants were riding and a horse which plaintiff's employe had negligently permitted to wander on the highway. Defendant answered, denying that the case fell within the provisions of the policy so as to place it under a duty to settle or defend and

alleging failure of notice of the accident. A reply to the answer served to join issues. At the conclusion of the testimony, defendant's motion for a directed verdict was denied. An affirmative answer was given by the jury to the only question submitted to it, *i. e.,* "Was notice of the collision of the automobile and the horse given by the plaintiff to the defendant within a reasonable time after the collision?" Findings of fact and conclusions of law were made and judgment was ordered for plaintiff. Defendant's motion for an order amending the findings of fact, conclusions of law, and order for judgment was denied, and judgment for plaintiff was entered.

Appellant contends that the trial court erred (1) in refusing to grant its motion for a directed verdict; and (2) in refusing to accept and adopt the findings of fact, conclusions of law, and order for judgment attached to defendant's notice of motion for an order amending those of the court.

The portions of said findings which are important for present purposes follow:

"2. That on and prior to April 24, 1930, the date of the insurance policy involved herein, and until subsequent to July 30, 1930, plaintiff was engaged in the business described in the policy contract at about three miles northeast of Biwabik, Minnesota; * * * At the time of the negotiation of said insurance contract, the defendant's duly authorized agent solicited the same at the plaintiff's place of business and gravel pit at the point described in the policy, *and then saw and knew the nature of the plaintiff's operations, and that the-plaintiff had and used horses in connection therewith, and had servants and employes to care for and drive said horses; and he was advised by the plaintiff that it desired such insurance contract as would furnish complete coverage in its operations.* [Italics supplied.]

\* \* \* \* \* \*

"4. That on the evening of July 30, 1930, a horse used by the plaintiff in carrying on its business at the place described in the policy contract was negligently permitted to escape from the

plaintiff's custody and premises and came onto public highway No. 35 between the Villages of Biwabik and Aurora in St. Louis county, Minnesota, where it came into collision with an automobile in which one Edna Pirila and others were riding, as a result of which collision she sustained bodily injuries for which she made claim against the plaintiff for damages; and the other occupants of said automobile made claims of bodily injuries; all of said claims being on the grounds that the plaintiff negligently permitted said horse to escape and to be upon said highway in violation of the laws of the State of Minnesota.

"5. That such escape of the horse from plaintiff's custody and premises and its presence upon the highway at the scene of the accident were caused by the negligence of the plaintiff's employe and driver in charge of said animal, and the injuries and damages sustained by said Edna Pirila (later Edna Serr) and the other occupants thereof were proximately caused by the negligence of the plaintiff's servant, employe, and driver in charge of the horse at the time of its escape.

\* \* \* \* \* \*

"7. That said accident of July 30, 1930, and the bodily injuries sustained by said Edna Pirila and other occupants of said automobile in which they were riding were not caused by a draught or driving animal, or vehicle or automobile owned, hired, borrowed, or used by the plaintiff or any person while engaged in the maintenance or use of the same."

The substance of findings of fact 9 to 14 is that defendant thereupon refused to defend or settle the claims arising out of the accident; that plaintiff, acting in good faith, did settle said claims; that in 1936 an action was brought by Edna Pirila Serr to recover for damages incurred by reason of the accident; that defendant, after having been given proper notice, refused to defend or settle this action; that plaintiff, acting in good faith, did defend the action, which ended with a judgment in a specified amount being had against plaintiff; that by reason of the settlement and subsequent action expenses were incurred by plaintiff

in specified amounts; that by failing to settle or defend, the insurer breached its contract obligations to plaintiff.

Appellant argues that the part of the second finding of fact which we have italicized and the jury's answer to the question submitted to it are not supported by the evidence. Having examined the record, we conclude that this claim is without merit. The contention that the seventh finding of fact contradicts the fifth is based on a misinterpretation of the meaning of the language used; but, in any event, the matter is immaterial, for the reason that the finding proposed by appellant as a substitute could have been adopted or the findings, proposed and adopted, omitted entirely without changing the result.

The important question in the case is whether the accident here involved was excluded from coverage by Condition A(4) of the exclusions contained in the policy. The general coverage clause provides:

"V. This policy covers, except as provided in Condition 'A,' all claims for bodily injuries including death at any time resulting therefrom accidentally suffered or alleged to have been suffered by any person or persons other than employees of the Assured, by reason of and during the prosecution of the business described in and conducted at the location named in Statement No. 4 of said Schedule."

Under the caption "Classification of Operations" there was typed into Statement No. 4 of the contract the following:

"1(a) 4000—Sand and Gravel Digging—no canal, sewer or cellar excavation—*including Drivers, Chauffeurs and their Helpers* * * *." [Italics supplied.]

The conditions of the policy designated "Exclusions" are in part as follows:

"Condition A. This policy does not cover loss from liability for, or any suit based on injury and/or death. * * *

"(4) Caused by any draught or driving animal, or vehicle or automobile owned, hired, borrowed or used by the Assured or any person while engaged in the maintenance or use of same. * * *"

Since the injury was caused by the negligence of an employe of plaintiff while said employe was engaged in the maintenance or use of a draught animal used by the assured, the exclusion set out above, considered without reference to the words typewritten into Statement No. 4, might well be said to apply to the accident here involved. At the same time, since the employe involved was, according to the evidence, a driver engaged at the time of his negligence in unharnessing the horse which he had been driving, it seems clear that the clause which by reference to Statement No. 4 specifically includes drivers, chauffeurs, and helpers brings the accident within the accident protection afforded by the policy. The conflict thus appearing cannot be reconciled, because drivers, chauffeurs, and their helpers must necessarily use or maintain animals, vehicles, or automobiles owned, hired, borrowed, or used by the assured. It must be resolved by applying one of the provisions in preference to the other. In choosing the one to be ignored we are governed by the rule that provisions inserted in the policy form must be accepted, in case of conflict with form provisions, as disclosing the intent of the parties. The first case in this jurisdiction to enunciate that principle of construction was Phoenix Ins. Co. v. Taylor, 5 Minn. 393 (492), where an action was brought on a fire insurance policy covering a stock of goods in a general retail store. By the terms of the policy form, the contract was to be void if gunpowder was stored on the premises. An inserted clause provided that the contract was to cover "their stock of goods * * * such goods as are usually kept." The court considered gunpowder to be a part of a general retail store's ordinary stock and was therefore forced to choose between the conflicting provisions. In deciding that the inserted phrase should control, the court said [5 Minn. 396]:

"In the interpretation of such instruments, it is always to be kept in sight, that the main portion of the policy, with all its

conditions and restrictions, are in a printed form, intended to be sufficiently general to meet all cases, and prevent the necessity of drawing a policy for each risk taken, which would very much retard and embarrass the transaction of such business; and that the written part inserted by the parties, is more immediately expressive of their meaning and intention concerning the contract they are entering into, than the printed portion. There is a rule of construction, therefore, applicable to such instruments, which gives to the written portion of them controlling force, when there is any conflict or want of harmony between it and the printed stipulations."

The rule of the Phoenix case was subsequently followed by this court in Broadwater v. Lion F. Ins. Co. 34 Minn. 465, 26 N. W. 455; Russell v. Manufacturers' & B. F. Ins. Co. 50 Minn. 409, 52 N. W. 906; Mareck v. Mutual Res. F. L. Assn. 62 Minn. 39, 64 N. W. 68, 54 A. S. R. 613; cf. National Surety Co. v. Erler, 175 Minn. 14, 220 N. W. 543.

In the policy now before us, the exclusion set out above is part of the printed form; that part of Statement No. 4 which makes specific reference to drivers, chauffeurs, and their helpers was typed into the policy. We conclude that the latter must take precedence over the former, and for that reason the accident here involved was covered by the policy.

If further support for the conclusion at which we have arrived were needed it could be had by applying other principles of insurance contract construction. The surrounding circumstances may be considered in determining the meaning of policy provisions. McCullough v. Georgia Cas. Co. 137 Minn. 88, 162 N. W. 894. In case of doubt, the subject matter may be examined for the purpose of applying thereto the language of the contract. Mather v. London G. & A. Co. 125 Minn. 186, 145 N. W. 963. The trial court found that defendant's soliciting agent "saw and knew the nature of the plaintiff's operations, and that the plaintiff had and used horses in connection therewith and had servants and employes to care for and drive said horses; and he was ad-

vised by the plaintiff that it desired such insurance contract as would furnish complete coverage in its operations." As we have previously said, this finding is supported by the evidence. Considered with reference to the policy here involved, the facts thus found make it quite clear that the parties to the contract intended it to cover accidents such as the one in question.

We find the other assignments relied upon by appellant to be without merit.

Affirmed.