Frances GREENE, and Walter T. Greene, Plaintiffs,

v.

Jay L. RAYMOND, Individually and d/b/a Kearney Standard Service, Defendant and Third-Party Plaintiff,

and

The American Oil Company, a Maryland corporation, and Standard Oil Company, an Indiana corporation, Defendants,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, Third-Party Defendant.

Civ. A. No. 66–C–220.

United States District Court
D. Colorado.

June 23, 1967.

See also D.C., 41 F.R.D. 11.

Robert Leland Johnson, Denver, Colo., for plaintiffs.

Robert R. Montgomery, Denver, Colo., for defendants.

Earl H. Johnson, Denver, Colo., for third-party plaintiff.

Wormwood, Wolvington, Renner and Dosh, Paul D. Renner, Denver, Colo., for third-party defendant.

WILLIAM E. DOYLE, District Judge.

## MEMORANDUM OPINION AND ORDER

The matter before the Court is the claim of the third party plaintiff against the third party defendant above named. Trial was to the Court. There were few disputes of fact and for the most part the determination here involves the construction of particular provisions of a liability insurance policy. Therefore, formal findings of fact and conclusions of law are deemed unnecessary and are dispensed with.

The present action grows out of a judgment which was entered in this Court on February 10, 1967, in an action in which Frances and Walter T. Greene were plaintiffs and Jay L. Raymond, individually and doing business as Kearney Standard Service, The American Oil Company, a Maryland corporation, and Standard Oil Company, an Indiana corporation, were defendants. The verdict was in favor of the plaintiff Frances Greene against Raymond and the oil companies, in the amount of $10,000.00 together with interest and costs.

On May 8, 1967, Frances Greene executed a formal Satisfaction of Judgment. The money for the payment of this judgment was advanced by the oil companies. In turn, Jay L. Raymond, in accordance with an indemnity agreement with the oil companies, promised to repay the oil companies for the amount of this, together with the costs and expense of the litigation incurred by the oil companies.

The present suit seeks reimbursement against St. Paul Fire and Marine Insurance Company based upon a public liability insurance contract. In this suit Raymond seeks the $10,000.00 together with the costs of suit to which he has become obligated to the oil companies, plus the cost of defending the action, including attorneys' fees. St. Paul did not enter into or participate in the main trial. They denied liability and continue to take this position. Thus, as we view it, the issue is whether there is insurance coverage in connection with the incident which is the subject of the main lawsuit. At the trial there were stipulations as to most of the material facts, but in addition evidence was offered as to the nature of the service rendered by a gasoline service station as a matter of custom.

In order to determine insurance coverage it is necessary to consider briefly, at least, the facts which gave rise to the original liability. It was a personal injury action which occurred in January, 1962. At that time and at the present time Raymond was operating the Standard service station in Denver. He was marketing American Oil Company products through the Standard Division of American Oil. On January 11, 1962, an employee of Raymond's was sent on a service call to the nearby home of Frances and Walter Greene for the purpose of starting their automobile. The weather had been extremely cold. The employee started the motor of this Lincoln Hydromatic automobile, and in order to keep the motor running after he left, placed a 7-Up bottle under the brake pedal and on top of the accelerator so as to warm the engine by increasing the rate of idle. Before leaving the employee told Mrs. Greene that the car was started and to allow it to continue to warm for about an hour. He failed, however, according to the evidence at least, to warn her of the presence of the bottle. Subsequently, Mrs. Greene went out to drive the vehicle and as she sought to shift into reverse gear she stepped on the brake pedal. As she did so the accelerator was depressed by the 7-Up bottle and the car lurched backward striking an incinerator. Her contention against Raymond and the oil companies was that the act of the employee was, in the circumstances, negligent. The jury resolved this issue in favor of the plaintiff.

It should be mentioned parenthetically that the responsibility of the oil companies was submitted to the jury as a question of fact as to whether there existed a holding out of the service station as an agent of American Oil Company so as to create apparent authority.

Plaintiff had testified that she believed that the service station was indeed an agent of American and Standard and she produced various advertisements which were designed to build up the service station as a part of the Standard operation. The jury resolved this issue in favor of the plaintiff also.

The insurance policy which is now before us was admittedly in force on the day of the accident. It is entitled a "Combination Service Station Policy." It is on a standard printed form prepared by St. Paul. The first page contains a series of seven declarations naming and identifying the assured, specifying the limits of liability and setting forth certain warrants given by the insured. The "Insuring Agreements" and "Special Conditions" applicable thereto appear on pages 2 and 3. Part II of these agreements covers bodily injury and property damage liability. Paragraph VIII provides as follows:

"VIII. *Bodily Injury, Property Damage Liability*

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

"(a) bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person,

"(b) injury to or destruction of property, including the loss of use thereof,

caused by accident and arising out of the ownership, maintenance or use of the premises for the purpose of an automobile service station (and other purposes if described on the Declarations), *and all operations necessary or incidental thereto;* and the use in connection with such operations of any

automobile not registered in the name of, nor owned in whole or in part, nor borrowed, leased or hired by the Insured, a partner therein, or employees or agents of the Insured, or by a member of the household of such person." [Emphasis supplied.]

The other pertinent provision is found in the Special Conditions applicable to Part Two, and reads as follows:

"H. *Exclusions.* This policy does not apply:

\*   \*   \*   \*   \*   \*

"(8) To any accident caused by errors in workmanship or service; \* \* \*.

\*   \*   \*   \*   \*   \*

"(11) to any accident resulting from the operation of an automobile \* \* \* repair shop \* \* \* or any other business operation not incidental and usual to an automobile service station except as may be described in the Declarations."

It is the contention of St. Paul: *first,* that the accident did not occur on the premises[1] as that term is to be construed in the insuring agreement.

St. Paul's second contention is that the accident is covered by Exclusions H. (8) and (11) which are quoted above.

I.

Jurisdiction herein is based on diversity of citizenship.

II.

*The Applicable Law.*

Inasmuch as this contract was performed in Colorado and was presumably written in Colorado, we consider the law of Colorado applicable to the case although it has not been indicated to us that it was entered into in Colorado, nor has it been suggested that the law of Minnesota is different from that of Colo-

---

1. The policy defines the word "premises" to mean "the premises designated in the Declarations and includes the ways immediately adjoining." The parties did not submit a copy of the actual contract to us. We have only been given a copy of the printed form containing the Insuring Agreements and Special Conditions. We assume that the address of the Kearney Standard Service Station was inserted in the Declarations as the address of the insured, and that there were no written or typed alterations to the printed terms and conditions.

rado, if indeed the contract was made in that state.

## III.

### The Question of Coverage.

There are numerous cases which have considered coverage provisions such as those with which we are here dealing. On the other hand, there is a dearth of authority on the exclusion provisions which have been noted above.

Among the cases which we have considered on the coverage issue are decisions which deal with negligent acts occurring on or about the premises but which produce injuries at other locations. In this latter type of case some of the decisions have given greater emphasis to the negligent act,[2] whereas others have considered the location of the injury as determinative.[3] These cases show that the courts have not construed the "on the premises" provision strictly. They have generally followed the axiom that insurance contracts are to be liberally construed in favor of the insured, especially where the language of the contract has been prepared by the insurer. They have favored recovery and have placed the burden on the insurer to establish any exclusion from liability. See 13 Appleman's Insurance Law and Practice § 7401.

Other cases where, as here, the negligent act and injury both occurred off the premises, have considered the specific clause, "all operations necessary or incidental thereto." The Colorado Supreme Court considered this phrase in Phoenix Assurance Co. of New York v. Ocean Accident & G. Corp., Ltd., 145 Colo. 26, 357 P.2d 642, 646 (1960). There the insured garage employee, a "shag boy," delivered a repaired automobile to its owner and thereafter continued at the owner's request to drive the owner and another person to the latter's parked car. While proceeding to the other car the shag boy drove through a red light and collided with another automobile. The court held the insurer liable under a provision covering accidents arising from "ownership, maintenance or use of the premises for the purpose of an automobile dealer, repair shop, service sta-

---

2. E. g., in Hultquist v. Novak, 202 Minn. 352, 278 N.W. 524, 525 (1938), an eleven-year old boy purchased some gasoline at a service station for the purpose of cleaning a tricycle. The gasoline was poured into a coffee can which the boy had furnished, and during the process some was spilled on his clothes. Upon reaching the house about two blocks away from the station, the boy tripped and fell. He struck a match to see what had happened and the gasoline ignited, severely burning him. Judgment was obtained against the service station owner, but its casualty company was held not liable, the court stating: "As applied to a filling station, 'on or about' obviously does not cover private premises two blocks away." See also, Heinrich v. Globe Indemnity Company, 276 Ala. 518, 164 So. 2d 709 (1964).

3. In Miesen v. Bolich, 177 Cal.App.2d 145, 1 Cal.Rptr. 912, the insured operated a service station and automobile repair shop and kept on their premises several trucks owned by a rental agency which they maintained and rented for a monthly commission. A relative of one who had rented a truck was injured while loading furniture because of some defective side racks and stakes. The policy covered the "maintenance or use of the premises for the purpose of an automobile dealer, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto * * *" but excluded from its coverage "any automobile while rented to others by the named insured". The court disregarded the exclusion clause and held the insurer liable. The faulty maintenance of the rental truck, rather than the location of the accident, was the significant fact emphasized. See also, Great American Ins. Co. v. Triplett, 243 Miss. 815, 139 So.2d 357 (1962); Jeffries v. General Casualty Co., 46 Wash.2d 543, 283 P.2d 128 (1955); Employers' Liability Assur. Corp. v. Youghiogheny & O. Coal Co., 8 Cir. 1954, 214 F.2d 418; Lieberman v. New Amsterdam Casualty Company, 284 App.Div. 1051, 135 N.Y.S. 2d 850 (1954), rehearing and appeal denied 285 App.Div. 830, 137 N.Y.S.2d 840 (1955); St. Paul Fire & Marine Insurance Co. v. Coleman, 8 Cir. 1963, 316 F. 2d 77, cert. denied 375 U.S. 903, 84 S.Ct. 191, 11 L.Ed.2d 143 (1963), all upholding the liability of the insurer.

tion, storage garage or public parking place, and all operations necessary or incidental thereto; * * * and the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in the above defined operations." It was ruled that the automobile was being used in connection with the operations necessary or incidental to the business of the garage. It was said that the service which was being rendered was one of the things covered by the policy.

In Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co. v. Travelers Ins. Co., 233 Md. 205, 196 A.2d 76, 79–80 (1963), the insured sign painting company had undertaken to paint a sign on the side of a bus owned by one Bartko. This work was performed at the paint shop of the insured. Bartko came to the shop and asked the insured's employee to drive the bus to his home. The employee refused to do this but agreed, at Bartko's suggestion, to follow Bartko home in the latter's car while he drove the bus home, a distance of some two miles. The employee had an accident while driving Bartko's automobile. It was held that the insurer was liable notwithstanding that it was not standard practice for the sign company to deliver the vehicles that had been painted, and even though the employee was not engaged in driving a vehicle on which no work had been performed. The Maryland Court arrived at this by construing the phrase "all operations necessary or incidental thereto." It was pointed out that the service was being rendered for the customer and arose out of the painting of the sign; that it was related in time to the performance of this work and accordingly was necessary and incidental thereto.

In Lloyd's Casualty Insurer v. McCrary, 149 Tex. 172, 229 S.W.2d 605, 609 (1950), the injury resulted from the insured's alleged improper installation of butane gas storage tanks. Although the policy purported to cover injuries on the premises only, liability was upheld on the basis of the clause "all operations during the policy period which are necessary or incidental thereto." It was reasoned that since the use of the premises was "Butane Gas Operation," that coverage could reasonably be applied to an installation at a distant place.

In Hardware Mutual Casualty Co. v. Cox, 340 S.W.2d 263 (Tenn.1960), the coverage clause included injury and property damage "arising out of the ownership, maintenance or use of the premises for the purpose of an automobile service station, and all operations necessary or incidental thereto; and the use in connection with such operations of customers' automobiles while in charge of the named insured for servicing." An exclusion clause made the policy inapplicable to injuries arising from the use of the premises for purposes "not customary and necessary to the operation of an automobile service station, and all operations in connection therewith," and specifically mentioned engine or body repair work as a type of prohibited, non-customary use. The Tennessee Court held the insurer to be liable in a situation in which the customer had brought her car in for the installation of a new battery. In connection with this it was discovered that a new water pump was needed in addition to the battery. The service station sent one of its employees to a nearby shop to find a suitable used pump. It was while on this trip that the employee struck and killed a pedestrian. The basis for the holding was that it was customary for service stations to attempt to locate used parts for a regular customer and hence that the injury occurred in connection with a necessary and incidental activity of the station's operation; that therefore the injury was within the scope of the "premises" coverage of the policy and outside the exclusion provision.

We have considered the decision of the Tenth Circuit in Citizens Casualty Co. of New York v. L. C. Jones Trucking Co., 10 Cir. 1956, 238 F.2d 369. This deci-

sion is not in point. There the exclusion clause was specifically applicable and the phrase "all operations * * * necessary or incidental thereto" could not extend coverage to the injury in question.

■ The evidence presented in the case at bar established conclusively that service calls away from the actual premises are usual, customary and indeed necessary in the operation of a service station. A distinction was made between a "filling station" and a "service station." The former does not respond to such calls. The latter customarily and ordinarily goes out to render help to the automobile of a customer which will not start or otherwise is in minor distress. The Kearney Standard Station was shown to be a "service station," and the policy in question undertakes to cover such an operation. Had it been the intent and design of the insurer to limit coverage to passive conditions on the premises it could have done so. We conclude that the words of the policy embrace the incident with which we are here concerned.

## IV.

### The Question of Whether the Policy Excludes this Incident.

We have examined the two exclusions, "Special Conditions" H. (8) and (11) and are of the opinion that neither applies to the facts of the instant case.

■■ Having concluded that the Insuring Agreements cover accidents such as the present one "arising out of the use of the premises for the purpose of an automobile *service* station * * * and all operations necessary or incident thereto," it is, first of all, illogical to at the same time hold that the conduct in question is an accident caused by an error in *service* as provided in condition H. (8). Such a construction would restrict this policy to virtually no coverage. For example, if an attendant were putting air in a tire or pumping gasoline into a tank and he would in a sense be "servicing" a car, and if while doing so he caused a customer to fall down, it would have to be held that this was an error in service. Such a result would be anomalous. It would be difficult to conceive a fact situation in contemplation of the policy.

Secondly, neither workmanship nor service logically includes the use of a 7-Up bottle for the purpose of accelerating an engine. This would be at the very best a remote incident to the starting of the car. It could scarcely be regarded as workmanship. Rather, this term suggests such activities as replacing spark plugs, batteries, changing oil, lubricating the car, repairing tires, etc. It seems sensible to restrict this term to direct adjustment, repair or replacement on the car itself. The term "service" carries pretty much the same connotation. Although it can be regarded that the placing of the 7-Up bottle constituted service, it is not to be construed as such in the strict sense and we are obligated to strictly construe the exclusion clause.

As to the second exclusion, it is sufficient to say that there is ample evidence that the services here rendered were within the normal operation of the service station and did not entail the use of the station as a "repair shop."

All in all, we are of the opinion that there is coverage, that the plaintiff is entitled to recover and, accordingly, it is

Directed that judgment be entered in favor of the third party plaintiff against the third party defendant. Counsel for third party plaintiff will prepare a judgment in accordance with the remarks made from the Bench at the close of the trial. This judgment should include the attorneys' fees and costs the third party plaintiff has become obligated to pay to the oil company. It also should include the attorneys' fees and costs of Raymond in connection with the trial of the case of Greene v. Raymond and the oil companies.

The entry of judgment will become effective as of the time of signing the formal judgment.