Bulyga *v.* Underwriters at Lloyd's, London.

---

JOSEPH BULYGA, JR., & another *vs.* UNDERWRITERS AT LLOYD'S, LONDON & another.

Essex.    February 21, 1973. — June 19, 1973.

Present: ROSE, KEVILLE, & ARMSTRONG, JJ.

*Insurance,* General liability insurance. *Negligence,* Fireworks. *Proximate Cause. Words,* "Liability arising from fireworks."

A policy which insured a fireworks display company against liability except for "liability from [f]ireworks which are intended to travel through the air" insured it against liability imposed on it for injuries to a spectator caused when an aerial bomb exploded in and fragmented a portion of a fireworks gun negligently left unshielded, and a fragment struck the spectator. [362-363]

BILL IN EQUITY filed in the Superior Court on March 19, 1969.

The suit was heard by *Brogna,* J.

*Salvatore J. Basile (Harry N. Steinberg* with him) for Underwriters at Lloyd's, London.

*John A. McNiff* for the plaintiffs.

ROSE, J. This is a bill in equity brought under the provisions of G. L. c. 214, § 3 (10), to reach and apply the rights of the defendant Interstate Fireworks Mfg. & Display Company, Inc. (Interstate), under a certificate of public liability insurance (supplemented by an excess of loss certificate) issued by the defendant Underwriters at Lloyd's, London (Lloyd's), in satisfaction of judgments recovered by the plaintiffs against Interstate. Lloyd's disclaims coverage of this accident, asserting that the provisions of an endorsement to the basic certificate excludes its liability thereunder. The court below found for the plaintiffs, made findings, rulings, and an order for decree, and adopted its findings as its report of material facts. Lloyd's appealed from the final decree. The evidence is reported.

On July 3, 1963, at 11 P.M., the minor plaintiff (plaintiff), then sixteen years old, was in Patton Park in the town of Hamilton, watching a display of fireworks being presented by Interstate, through its operator, Anthony Cannatelli. Approximately 15,000 spectators were present, all situated at least 300 feet from the site of the firing. The fireworks were fired from a metal tube referred to as a gun. The gun was made of one-quarter inch thick galvanized steel tubing and was thirty inches in length. The open mouth of the gun extended upward toward the sky. After it was placed in a trench, earth was compacted around the bottom three-fourths of the tube. Two railroad ties had been placed near the area where the fireworks were being fired. There was testimony to the effect that it was the standard and accepted practice to use such ties as barriers between the spectators and the one-fourth portion of the gun which extended above ground. This was usually done to deflect fragments of the metal gun, should a firework explode within the tube and shatter the exposed mouth of the gun.

That night no ties were used, nor were any other barriers placed between the gun and the spectators. The ground

between the gun and the spectators was open and flat. During the display an aerial bomb twenty-two inches in length and four inches in circumference was placed in the gun. Cannatelli lit its fuse. Almost immediately the bomb exploded within the gun. The upper portion of the gun fragmented, hurling a piece of the tubing through the air so as to strike the plaintiff in the face as he sat on the grass some 360 feet away. He sustained severe and permanent injuries.

The relevant portion of the basic certificate issued by Lloyd's and in effect at the time of the accident provided:

"1. Coverage A — Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages . . . because of bodily injury . . . sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined."

The certificate bore an *"Endorsement No. 5"* which read as follows:

"Notwithstanding anything contained herein to the contrary, this [p]olicy excludes liability arising from [f]ireworks which are intended to travel through the air or to move from the position in which they are fired."

The sole question presented is whether the foregoing endorsement is effective to exclude liability for what occurred from the broad provisions of Coverage A. We are of the opinion that it does not. The judge below in his report of material facts stated that:

"I find that the jury[1] on the evidence and the Judge's Charge was warranted in determining that the injury to

---

[1] The original action against Interstate was tried to a jury.

the plaintiff was caused by the negligence of Interstate in not taking proper precautions against injury to a person such as the plaintiff by fragmentation of the exposed end of the tube."

He further stated that:

"I find and rule that the negligence of Interstate Fireworks in not taking proper precautions for protection of spectators was the direct and proximate cause of the injury to the plaintiff. I find and rule that the explosion of the aerial bomb within the tube, although being a related event and being a factor in causing the tube to explode, was not the proximate cause from which the liability arose."

We concur with the ruling of the court below that the negligence of Interstate in failing to take the proper precautions for the protection of the spectators was the proximate cause of the injury, and not the firework itself. While it is true that the firework involved was "intended to travel through the air" or to "move from the position in which . . . [it is] fired," the injury sustained by the plaintiff was caused not by the firework but by the failure to take the required precautions when the fuse of the firework was lighted. The testimony clearly demonstrated that the appropriate precaution to safeguard against fragmentation injury was the use of a barrier such as railroad ties around the exposed part of the gun. That there was no such protection is not in dispute. Further, the evidence established that the injury was not caused by "[f]ireworks which are intended to travel through the air or to move from the position in which they are fired," as excluded by endorsement No. 5, but was caused by metal fragments propelled into an otherwise safely distant area by the failure of the firework to accomplish its intended motion, and by exploding at the point of origin, shattering the gun in which it was contained.

We find that viewing the policy as a whole and giving the

words contained therein their usual and ordinary significance (*Woogmaster* v. *Liverpool & London & Globe Ins. Co. Ltd.* 312 Mass. 479, 481), the words "liability arising from fireworks," contained in the instant policy preclude liability arising solely from such fireworks. To interpret the exclusionary clause as Lloyd's would have us do would result in protection to Interstate that is severely and unrealistically limited if not totally ineffective. Exclusions from coverage are to be strictly construed, *Vappi & Co. Inc.* v. *Aetna Cas. & Sur. Co.* 348 Mass. 427, 431, and the doctrine is well established that any ambiguity in the language of a policy must be construed in favor of the insured. *Transamerica Ins. Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.* 361 Mass. 144, 147. *Vappi & Co. Inc.* v. *Aetna Cas. & Sur. Co., supra,* at 431.

*Decree affirmed.*