**Terry BRAXTON, Plaintiff-Respondent,**

**v.**

**UNITED STATES FIRE INSURANCE COMPANY, Defendant-Appellant.**

**No. 45263.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 12, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 13, 1983.

Application to Transfer Denied
June 30, 1983.

Theodore H. Hoffman, St. Louis, for defendant-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Respondent Terry Braxton brought this action in equity against appellant United States Fire Insurance Co. Respondent sought to satisfy a judgment against one Aaron Blunt out of the proceeds of a liability insurance policy issued to Blunt by appellant. The appellant maintained that Blunt's liability to the respondent was not covered by the policy. The trial court found that respondent's injuries were covered by the policy. We affirm.

Respondent was shot and injured by an intoxicated gas station attendant following an altercation over the making of change. Respondent brought suit against Aaron Blunt, the owner of the gas station, on a theory of negligent supervision. Because the record of that trial was not made part of the record on this appeal, our knowledge of the facts involved is rather sparse. The record before us does show that the gun belonged to the attendant; that the attendant was intoxicated; and that the jury found against Blunt on the theory that he permitted the attendant to continue work even though he knew or should have known it was likely the attendant would injure a customer. Respondent obtained a judgment against Blunt for $100,000.

Appellant, Blunt's liability insurance carrier, denied coverage under its policy, which contained the following exclusion, among others:

This insurance does not apply . . . .

. . . to bodily injury and property damage arising out of the ownership or use of any firearm.

The respondent brought this equitable action against the insurer to obtain satisfaction of the judgment. Both parties submitted memoranda of law to the trial court. The respondent argued that nothing in the insurance policy excluded coverage for Blunt's negligence in supervising his employees and that the policy by its terms

afforded comprehensive coverage for any liability not specifically excluded. The appellant argued that the plain language of the firearm exclusion disclaimed coverage for all liability resulting from the ownership or use of firearms regardless of the theory on which such liability was based. The trial court found for the respondent and the appellant brought this appeal.

The policy in issue is a "special multi-peril" comprehensive property and liability insurance policy. It provides, in pertinent part, that:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises . . . .

An "occurrence" is defined in the policy as "an accident, including an injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The policy identifies "the insured" as Aaron Blunt, an individual, "but only with respect to the conduct of a business of which he is the sole proprietor." The "Exclusions" portion of the policy states that "this insurance does not apply" to bodily injury or property damage "arising out of" certain enumerated acts done "by," "for," or "on behalf of" the named insured. The exclusion here disputed was added to the policy by typewritten endorsement. It disclaims coverage for "bodily injury and property damage arising out of the ownership or use of any firearm." Unlike the other exclusionary provisions, it does not specify whether the "ownership or use" must be by, for, or on behalf of the named insured.

In appellant's view, the policy does not provide coverage for Blunt's liability to respondent. Its argument can be summed up as an uncomplicated syllogism: Respondent admits that his injury was caused by a bullet discharged from a firearm; the policy excludes from coverage any bodily injury arising out of the use of a firearm; therefore, respondent's injury is not covered by the policy. Appellant maintains that *Penn v. Travelers Insurance Co.,* 225 S.W. 1033 (Mo.App.1920) is controlling. That case involved an accident insurance policy which excluded from coverage any "accident, injury, disability or death resulting wholly or partly from . . . firearms." The parties stipulated that the insured was killed by the discharge of his own shotgun when he stumbled while trying to cross a wire fence. The plaintiff in *Penn* argued that the cause of death was the accidental stumbling and not the discharge of the gun. The court held that the policy provided no coverage under the stipulated facts, since whatever the *cause* of the gun's discharge, it was undisputed that the *result* of the gun's discharge was the insured's death.

The respondent significantly points out that the policy construed in *Penn,* unlike appellant's policy, did not restrict the exclusion to injuries arising out of "ownership or use" of a firearm. Instead it used the comprehensive phrase "resulting wholly or partly" from firearms, thus stating unequivocally that the exclusion would apply despite the existence of other concurrent or intervening causes.

We believe that the case before us is factually more similar to the later case of *Cochran v. Standard Accident Ins. Co. of Detroit,* 219 Mo.App. 322, 271 S.W. 1011 (1925). That case involved an accident insurance policy which provided that: ". . . no benefits will be paid for injuries . . . received under or in consequence of any of the following conditions: . . . while engaged in aerial navigation, hunting, fishing, or in exploring expeditions, or under any circumstances from firearms of any kind, explosives, war or riot . . . ." The insured was killed while riding on a train when an insane man suddenly and without warning fired a pistol. The court found that the insured's death was covered under the policy. It held that a reasonably intelligent

person perusing the terms of the contract could understand that it excluded coverage only while the insured was engaged in handling or using firearms, or participating in some dangerous activity in which he was likely to be injured by them. *Id.* 271 S.W. at 1013. The court noted that exclusions from coverage must "be accomplished by language unequivocal in its meaning." *Id.* Because the language in the policy at issue was reasonably susceptible of two interpretations, the court was required to apply the construction most favorable to the insured and this is especially true when the clause in question attempts to limit or exclude coverage under the policy. *Heshion Motors v. Western International Hotels,* 600 S.W.2d 526, 537 (Mo.App.1980). The exclusion at issue in this case does not unequivocally exclude acts arising out of the ownership or use of a firearm by *any* person under *any* circumstances. A reasonable person reading the exclusion in context could fairly conclude that the exclusion applied only if the insured himself owned or used a firearm in connection with his business, or if someone else used the firearm "for" him or "on his behalf." Here the insured did not own or use the firearm, nor was it used "for" him or "in his behalf." We find that the exclusion did not apply under these circumstances and it is clear that the trial court acted properly within the constraints as heretofore set out by applying a construction which favored the insured.

■ In addition, the respondent argues that the trial court could also have found coverage on the theory that the insured's negligent supervision was a separate and non-excluded cause of respondent's injuries. Although no Missouri cases are precisely on point, it is widely accepted that where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable so long as one of the causes is covered by the policy. *State Farm Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973). *Partridge* involved a homeowner's policy which excluded coverage for injuries arising out of the use of an automobile. A passenger in the insured's car was injured when a pistol discharged as the car traveled over a rough section of road. The insured had negligently modified the trigger mechanism of the pistol to give it "hair trigger action." The court found that the policy applied despite the automobile use exclusion since the negligent modification of the gun and the use of the automobile were concurrent proximate causes of the passenger's injury, only one of which was excluded from the policy.

A similar result was reached in *Le Jeune v. Allstate Ins. Co.,* 365 So.2d 471 (La.1978). In that case, a deputy sheriff assigned to escort a funeral cortege failed to stop his vehicle and properly secure an intersection. His negligence resulted in a collision between the hearse and another vehicle. The sheriff's professional liability policy excluded coverage for injuries "arising out of the ownership, operation, or use" of motor vehicles. The court found coverage under the policy, stating that "the exclusion clause does not apply where the insured's act is a result of negligence independent of, even though concurring with, his use of an automobile." *Id.* at 479; *accord, Curry v. Iberville Parish Sheriff's Office,* 405 So.2d 1387 (La.App.1981).

To the same effect is *Unigard Mutual Ins. Co. v. Argonaut Ins. Co.,* 20 Wash.App. 261, 579 P.2d 1015 (1978). In that case, a child broke into a school building and set a fire in a trash can. The building suffered extensive damage. It was later determined that negligent supervision by the child's parents was a contributing cause of the incident. The parent's homeowner's liability policy excluded coverage for damages which were "expected or intended from the standpoint of the named insured." The court found that although the policy excluded coverage for damages due to the child's intentional act, it did not exclude the parent's liability for their negligence: " . . . an excluded act of one insured does not bar coverage for additional insureds who have not engaged in the excluded conduct." *Id.* 579 P.2d at 1019.

The reasoning has been applied in several cases involving firearms and explosives. *Grand Union Co. v. General Accident Fire & Life Assurance Corp.,* 254 A.D. 274, 4 N.Y.S.2d 704, *affirmed* 279 N.Y. 638, 18 N.E.2d 38 (1938), involved a liability policy issued to a grocery store owner. The policy stated that it covered only accidents arising from use of the premises for business purposes. In addition, it specifically excluded coverage for injuries caused by the "presence" on the premises of "any material intended for use as an explosive." A person not employed by the insured entered the store with a rifle and ammunition. Several of insured's employee's helped him to set up a target against a basement door which opened onto a public street. They took turns firing at the target. One of the bullets penetrated the door and killed a passerby. The insurer refused to defend on the grounds that the incident was not within the coverage of the policy. The court found coverage, since the policy did not unequivocally exclude coverage for the negligence of employees acting outside the scope of their employment. *Id.,* 4 N.Y.S.2d at 710. The court further found that the clause excluding injuries caused by the "presence" of explosives did not apply to the transient presence of ammunition brought by an outsider. *Id.* at 711.

In *New Jersey Property Liability Guaranty Assoc. v. Brown,* 174 N.J.Super. 629, 417 A.2d 117 (1980), the court considered a homeowner's policy which excluded injuries "arising out of business pursuits except activities therein which are ordinarily incident to non-business activities." The insured purchased a pistol for the protection of his business. A friend dropped by his office on a social visit. As the insured showed his friend the new pistol, it discharged. The court recognized that the resulting injuries were "causally related" to the insured's business pursuits. Nevertheless it found coverage because the injury also arose from concurrent (and non-excluded) nonbusiness causes.

Fireworks, rather than firearms, were involved in *Bulyga v. Underwriters at Lloyd's,* 1 Mass.App. 359, 297 N.E.2d 68 (Mass.App.1973). A liability policy issued to a fireworks company excluded coverage for "liability arising from [f]ireworks which are intended to travel through the air or to move from the position in which they are fired." During a fireworks display, an aerial bomb exploded while still within its firing tube. Fragments of the tube struck a spectator some 360 feet away from the firing site. A jury found that the insured had been negligent in failing to place a barrier around the firing tube to deflect shrapnel. The court found coverage for the insured's negligence under the policy, despite the fact that the explosion of the aerial bomb was also a factor in causing the injury.

Additional authority supporting the trial court's decision may be found in *Engeldinger v. State Auto & Casualty Underwriters,* 306 Minn. 202, 236 N.W.2d 596 (Minn.1975); *Biwabik Concrete Aggregate Co. v. U.S. Fidelity & Guaranty Co.,* 206 Minn. 239, 288 N.W. 394 (Minn.1939); *Brown v. City of Laconia,* 118 N.H. 376, 386 A.2d 1276 (N.H. 1978); *Dora Twp. v. Indiana Ins. Co.,* 67 Ill.App.3d 31, 23 Ill.Dec. 801, 384 N.E.2d 595 (1979), *affirmed,* 78 Ill.2d 376, 36 Ill.Dec. 341, 400 N.E.2d 921 (1980); *Snell v. Stein,* 261 La. 358, 259 So.2d 876 (La.1972); *Greene v. Raymond,* 269 F.Supp. 871 (D.C. Colo.1967).

█ We find this line of cases persuasive and apply their reasoning to the policy before us. The insured's own negligence was a separate, concurrent and non-excluded cause of his liability. The policy issued by appellant did, therefore, provide coverage for respondent's injuries.

Appellant's second point fails to comply with Sup.Ct.Rule 84.04(d) and is dismissed.

Judgment affirmed.

KELLY, J., concurs.

SMITH, J., dissents in separate dissenting opinion.

SMITH, Judge, dissenting.

In recent years much public clamor has arisen that insurance policies be written in

simple and concise language. The industry has made attempts to satisfy that clamor. If such attempts are to be successful, policies must be interpreted by the courts in accordance with the usual meaning of such language, without undue straining of that language. I do not believe the majority opinion has so interpreted this policy and I therefore respectfully dissent. I believe the language of the Supreme Court in *Harrison v. MFA Mutual Ins. Co.,* 607 S.W.2d 137 (Mo. banc 1980) [6, 7] is applicable:

"Where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy ... '[T]he courts are not authorized to pervert language or exercise inventive powers for the purpose of creating an ambiguity when none exists.' ... We refuse to create an ambiguity under the policy language where none exists so as to construe the imaginary ambiguity in such a way to reach a result which some might consider desirable but which is not otherwise permissible under the policy or the law."

We are here dealing with a liability insurance policy protecting the insured against the consequences of his negligence which cause bodily injury or property damage. That coverage is limited by a special typewritten endorsement which provides:

"In consideration of the premium charged, the following exclusions are added to Coverages C Liability MLB 200:

(P) to bodily injury and property damage arising out of the ownership or use of any firearms ..."

That language is clear enough to me. It states concisely that if the bodily injury arises from the use of a gun it is not covered by the policy. The exclusion is in no way conditioned upon the "use" being that of the insured or "on his behalf" or "for" him. The endorsement makes clear that for a reduced premium the insured elected not to have liability coverage for bodily injury caused by firearms. We are now, under the guise of interpretation, adding coverage which the parties specifically deleted. The case relied upon by the majority, *Cochran v. Standard Accident Ins. Co. of Detroit,* 219 Mo.App. 322, 271 S.W. 1011 (1925), based its holding on the rule of construction "noscitur a sociis." [1] There the reference to firearms appeared with a group of "conditions" to which, the court concluded, the insured was not to expose himself. His death resulted from a totally unexpected occurrence to which he was without knowledge or consent exposed. There are here no similar "conditions" and the exception to coverage involved deals only with one subject matter. I find the case relied on inapposite except in its recognition that where the exception clearly applies it is to be enforced. *Penn v. Travelers' Ins. Co.,* 225 S.W. 1033 (Mo.App.1920) is in my opinion controlling and indistinguishable.

In addition to its interpretation argument, the majority adds a second string to the bow, namely that the shooting and the negligent supervision were concurrent or independent torts and so coverage is available because of negligent supervision even if the shooting is excluded. This, of course, ignores the language of the endorsement which excludes coverage for a bodily injury arising out of the use of firearms. The injury here was caused by a firearm. Whether the use of that firearm was the product of the insured's negligence or not does not change the fact that the injury sustained arose from the non-covered use of a firearm. The insured's negligent supervision resulted in injury only because of the use of a firearm. The insured's negligence was in no way concurrent or independent of the use of the firearm.

Further, this second string effectively emasculates the endorsed exclusion and presumably all the other exclusions in the policy. This was a liability policy. Plaintiff based his recovery on a judgment granting

---

1. "The meaning of a word is or may be known from the accompanying words." Black's Law Dictionary (5 Rev.Ed.1978).

damages for injuries proximately caused by insured's negligence. Negligence here consists of a duty to the injured party, a breach of that duty and an act resulting from that breach of duty causing injury. Separating out the duty and breach from the act causing the injury and treating them as independent and separate bases of recovery is a *non sequitur.* We are not dealing here with concurrent tortious actions by the insured but with the elements of one tort.

I do not find the cases relied upon by the majority applicable. This case does not concern a definition of "use" of a firearm and whether the injury sprung from such use. The meaning of "use" was the issue in some of the cases relied upon by the majority.[2] That the injury occurred from the "use" of a firearm is conceded. Nor are we dealing with definitions of business and non-business activities, as was true in another of the cases relied on.[3] The remaining cases cited involve different questions than that before us[4] with one possible exception.[5]

I would reverse.

**2.** *State Farm Mutual Automobile Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973); *LeJeune v. Allstate Insurance Co.,* 365 So.2d 471 (La.1978); *Curry v. Iberville Parish Sheriff's Office,* 405 So.2d 1387 (La.App. 1981); *Grand Union Co. v. General Accident, Fire & Life Assur. Corp.,* 254 App.Div. 274, 4 N.Y.S.2d 704 (1938); *Engeldinger v. State Auto & Casualty Underwriters,* 306 Minn. 202, 236 N.W.2d 596 (Minn.1975).

**3.** *New Jersey Property Liability Guaranty Assoc. v. Brown,* 174 N.J.Super. 629, 417 A.2d 117 (1980).

**4.** *Unigard Mutual Ins. Co. v. Argonaut Ins. Co.,* 20 Wash.App. 261, 579 P.2d 1015 (1978) (whether exclusion applicable to one insured precludes coverage for another insured liable on a different theory); *Brown v. City of Laconia,* 118 N.H. 376, 386 A.2d 1276 (N.H.1978) (whether negligent failure to remove snow is an insured hazard of "street cleaning including snow removal" or is excluded as arising from use or condition of the streets); *Dora Twp. v.*

*Indiana Ins. Co.,* 67 Ill.App.3d 31, 23 Ill.Dec. 801, 384 N.E.2d 595 (1979) (meaning of word "controlled"); *Snell v. Stein,* 261 La. 358, 259 So.2d 876 (La.1972) (was negligent installation and maintenance of a traffic light excluded by exclusion of coverage of streets and sidewalks); *Greene v. Raymond,* 269 F.Supp. 871 (D.C. Colo.1967) (meaning of "service"); *Biwabik Concrete Aggregate Co. v. U.S. Fidelity and Guaranty Co.,* 206 Minn. 239, 288 N.W. 394 (Minn.1939) (conflict between general coverage clause and exclusionary provision).

**5.** *Bulyga v. Underwriters at Lloyd's, London,* 1 Mass.App. 359, 297 N.E.2d 68 (Mass.App. 1973). Arguably the court's decision is based upon a conclusion that the exclusion was limited to non-negligent injury by fireworks. It is also possible to read the opinion as supportive of the majority's reasoning. If the latter, I do not find it any more persuasive than I do the majority opinion for it suffers from the same vice.