NATIONAL SURETY COMPANY v. HERMAN ERLER.[1]

June 22, 1928.

No. 26,647.

**Test whether plaintiff could require additional insurance premiums from public contractor.**

1. Defendant had a contract with the state highway department for the erection of two bridges on a designated highway project. Under a "work order," purporting to direct that the work be done under the original contract, defendant erected two additional bridges on the same project. They had not been contemplated by the original contract. *Held* that notwithstanding its terms the new agreement evidenced by the work order was not a change or modification of the original contract but one for an entirely new and independent undertaking. Therefore plaintiff, as surety upon defendant's original contract bond, cannot require any additional premium thereon because of the erection of the two additional bridges. The test is whether plaintiff would have been liable under its bond for any claim arising in connection with the additional work. There would have been no such liability.

**Particular language used in contracts controls the general language of the surety bonds.**

2. The contract bonds in question referred to the contracts as being for designated highway "projects" as a whole, but the contracts themselves designated by particular language the precise work to be done. The particular language so used controls the more general language of the bonds.

**Surety not released from liability by a modification or change in contract.**

3. Defendant contracted for the erection of a retaining wall. As first designed it proved inadequate and the original plan was abandoned. Under a work order, a wall of different and much more robust construction was built in lieu of the one originally designed. *Held* a mere change or modification of the original contract and that the contract bond covered the same under a statute (G. S. 1923, § 9702) providing that the liability of the surety on such a bond is not released by a "modification or change" of the contract.

Highways, 29 C. J. p. 611 n. 37.

[1]Reported in 220 N. W. 543.

Plaintiff appealed from an order of the district court for Hennepin county, Baldwin, J. denying its motion for a new trial. Modified.

*Allen & Fletcher,* for appellant.

*Clarence T. Lowell,* for respondent.

STONE, J.

In 1923 plaintiff became surety for defendant as the contractor on three state highway jobs on state "projects" Nos. 5-28, 3-34 and 3-39, and in this action seeks to recover additional premiums for alleged "overrun" on a special covenant in the applications for the bonds, under all three contracts. The overrun, so-called, consists of extra work which plaintiff claims was done by defendant under the contracts whereby the total cost was so increased that additional premiums for the contract bonds accrued. Defendant admitted some overrun and that a sum much less than that claimed was due, and tendered judgment accordingly. The trial without a jury resulted in a decision for defendant. Plaintiff appeals from the order denying its alternative motion for amended findings or a new trial.

1. PROJECT No. 5-28. The contract embodied the "proposal," the "general specifications" for highway work and the special ones for "bridges and monolithic culverts." The proposal was for the removal of an old bridge and the construction of two new ones, numbered 4054 and 4128. The specifications required the contractor to perform "such work, in additional quantities other than those designated in the estimate, as may be deemed necessary to fully complete the highway [bridges] as planned and contemplated" and also to perform "unclassified work," for which there is no quantity and price included in the contract, "whenever, to complete fully the work as contemplated, it is deemed necessary or desirable," at prices to be fixed in a stated manner.

There is nothing about the contract, including the specifications, to indicate that the work would include anything more than the removal of the old bridge and the construction of the two designated new ones, including of course anything then unforeseen but which might subsequently be added to complete that work. The issue arises, because, without any new proposal or contract in any formal

sense, the contractor erected within the limits of project No. 5-28 two additional bridges, Nos. 4269 and 4270. They were made necessary by the abandonment of a channel change contemplated when the original contract was let to defendant and were built by defendant under an "order for unclassified work." According to the final estimates of the state highway department, bridges 4054 and 4128 (covered by the original contract) cost when completed respectively $3,742.59 and $9,073.81, a total of $12,816.40, while bridges 4269 and 4270, built under the work order, cost respectively $4,863.60 and $7,260.15, or a total of $12,123.75.

Without going into detail, we state as a fair assumption from the record that all the work under unclassified orders was by defendant and the highway department considered as having been done "under the terms," as the orders state, of the original contract. The bonds sued upon were furnished with the three original formal contracts and are conditioned for the completion of the contracts "in accordance" with their terms and the payment of all claims chargeable against the work.

The principal argument for appellant is predicated upon the statutory law pursuant to which public contractors' bonds are given. It is provided by G. S. 1923, § 9700, that no contract with the state for public work "shall be valid for any purpose" unless the required bond is furnished; and in § 9702, that no "modification, or change of the contract, or change in the work covered thereby" shall release the sureties on the bond. We assume that all defendant's work done on each project under unclassified work orders was considered by the highway department as done under and pursuant to the original contract. That doubtless is convenient for purposes of administration and explains the omission to require bonds when the additional work was let to defendant.

The postulate for plaintiff is correct that "parties are presumed to contract with reference to the existing law affecting or annexing incidents to their contracts." O'Neil v. St. Olaf's School, 26 Minn. 329, 332, 4 N. W. 47. The first present effect is that under § 9702 of our statute above referred to plaintiff as surety was not released by any mere modification of the bonded contracts. In § 9700, upon

which appellant relies principally, we find nothing extending, beyond the limits fixed by its express terms and purpose, the scope of any bond or contract. There is only the denouncement of invalidity on any contract for public work within the field of the statute which is not underwritten by the required bond. Nothing about the statute can lead to the result contended for by appellant. There is no ambiguity about the work contemplated by the original contract for the bridges. Neither is there uncertainty about the conclusion that the overrun for which plaintiff claims the additional premium on that job was work, or the cost of work, wholly outside of and beyond the scope of the original contracts. It was not required to change, perfect, or enlarge the work contemplated by them, but was rather something independent of and in addition thereto.

Counsel for appellant are correct also in saying that the test of defendant's liability for additional premium in connection with the work designated as overrun is whether plaintiff would have been liable under its bond for any claim arising in favor of a laborer, subcontractor or materialman. It is from that viewpoint that we consider the problem, and for the reason indicated we conclude that the bridge work done under the unclassified orders, being beyond the scope of the original contracts, could not have been made the basis of a valid claim against plaintiff as surety for defendant.

It will be a source of regret to us if this view of the matter entails difficulty or even uncertainty upon those in charge of or in any way concerned with public contracts. But if the practice is to continue of accomplishing, under unclassified work orders or the like, projects which as to the original contract are wholly new, unrelated and additional, it must be appreciated that they are in fact the subject matter of new and independent contracts with respect to which there must be observed the statutory requirement of a bond. Perhaps, so far as the highway department is concerned, a form of bond can be used which will avoid the difficulty by being sufficiently elastic in its terms to cover not only the original contract but also any work done by the contractor under work orders, within

such limitations of time and territory as may be agreeable to the parties involved.

The contractor and highway department considered defendant's work under unclassified orders as done under the original contracts. Such an assumption by the contracting parties may have its intended effect as between them, but its result upon a stranger to the new and substituted agreement must find its limitations in something binding upon such stranger. The terminology used by the contracting parties in characterizing what they have done cannot foreclose his rights. Plaintiff as surety was no party to the unclassified work orders. There was nothing in the contract, the bond or the application for the latter which, unaided by some new commitment on the part of plaintiff as surety, could extend its obligation to anything beyond the reach of the original contract. The latter of course would include anything in the way of a mere variation or change in the original calculated to achieve the same object. It would include any alteration or even addition which as a practical matter could be said to be within the contemplation of the contract as originally drawn, having in mind that the contracts and controlling statute provided for such alterations as might be further necessary or advisable to effectuate the contract purposes. It is not what the contracting parties as between themselves may think or say they are doing; it is not the terminology they adopt in disposing of the matter as between themselves, but rather what they have actually done that determines one way or the other the liability of the surety.

"Where the principal parties to a contract enter into an agreement for additional work not included in the original contract, such agreement is an independent contract, and does not constitute a material alteration of the original contract." 21 R. C. L. 1006.

So where a contract was for a stated stretch of road, an agreement for an extension thereof upon "the same basis and terms of the original contract" was held to be a new contract rather than a mere change of the original one. U. S. F. & G. Co. v. Henderson County (Tex. Com. App.) 276 S. W. 203.

2. The bonds rather carelessly refer to the contracts as being for the construction of the entire "project" to which they refer. But the argument for plaintiff is futile that because of such reference any work done by the contractor on the designated project is within the scope of contract and bond. That argument ignores, rather inexcusably, the fundamental requirement that the plainly expressed intention of contracting parties shall govern. In each case here involved the bond covers no more than the contract work, and the contract itself leaves no doubt as to precisely what work was contemplated. No contract is for the "project" as a whole, but only for specifically designated work thereon. The particular language written to designate the scope of the work governs as against any more general terms, particularly those of a mere printed form, referring to the same subject. That is elementary. 2 Dunnell, Minn. Dig. (2 ed.) §§ 1828, 1829. So it is useless to argue that any of the three contracts here involved covered as a whole the highway projects referred to and that they are not limited to the special work and structures particularly referred to by each of them for the purpose of designating its scope and subject matter.

As to the bridge work on project No. 5-28, we concur in the decision below, which denies the additional premium claimed by plaintiff. That conclusion applies also to the claim under the contract for work on project No. 3-39. There is no need for stating its facts. The amount involved is only $14.22.

3. PROJECT No. 3-34. The original contract is special in form and wholly typewritten. It bears date of August 1, 1923, and covers some 19 specific "jobs," most of them having to do with the moving of structures from the right of way of a state highway preparatory to its grading and the replacing of some of the structures on new sites. Among other things it required defendant to construct a retaining wall of cement blocks on a monolithic footing with a cross section 8 inches by 12. There was no requirement that footing or wall be keyed or anchored into the underlying ledge rock nor that the wall should be reinforced by rib posts. This wall was to flank the highway at the foot of a steep slope in order to furnish

lateral support for the abutting premises. Not to exceed ten per cent was completed when a severe storm demolished much of the completed work and demonstrated that the design was inadequate. There was an emergency demanding an adequate wall at once. Accordingly, without any formal contract but under an "unclassified work order" of the kind used in connection with project No. 5-28, a new type of wall and the price therefor was agreed upon; and this newly designed work proceeded to completion at a cost of $66,000 in excess of that estimated for a wall of the original design. The large increase is explained by the use of heavy footings keyed into the underlying ledge rock and numerous heavy concrete rib posts placed in the wall at regular intervals. The work order under which the wall was finally constructed purports to have been "issued under the terms of your present contract." But there was nothing in that agreement requiring the work to be done as it was, and there can be no pretense that under the original contract defendant was required to build any portion of the wall as finally it was built, or that it was anything but a substituted plan to accomplish what the work first required was designed to accomplish but for which it was found fatally inadequate.

However the work actually done was to accomplish one of the 19 objects of the original contract and nothing more. The original and inadequate plan had to be abandoned from foundation up. The substitute worked out under the unclassified work order was different only in method of construction and not in location, extent or purpose. It was not a new and different undertaking but fairly within the scope of the contract guaranteed by plaintiff under its bond. True, there was a radical change of the original contract, but yet it was no more than a change. In a strict legal sense, it was a new and different contract such as is every agreement for a binding alteration of a former contract. Its design was to accomplish a purpose of the original, and that but one of 19; so it was after all a mere "modification or change" under § 9702 of our statute. So plaintiff as surety continued liable and is entitled to an additional premium for the overrun, which was denied by the decision below. An excellent test of the problem presented by this

phase of the case was suggested in Boody v. Rutland & Burlington R. Co. 24 Vt. 660, 665:

"It was not intended as a separate independent contract, but merely as supplemental or additional to the other; and no doubt, in pleading, a declaration stating the original contract, and the agreement altering its terms in the particulars mentioned, would be good in law."

We are not unmindful that what we are holding to be, for present purposes, a mere modification of the original contract worked a substantial increase in cost. And there is authority for the proposition that, even where they are authorized by the contract, changes must "not materially increase the cost" beyond the original contract price, or the sureties will be released. Consaul v. Sheldon, 35 Neb. 247, 256, 52 N. W. 1104, 1107. But the argument loses most of its force when invoked by a paid surety whose business it is to insure the performance of contracts. It cannot resort, as can the gratuitous surety, to the rule of strictissimi juris. Standard S. & C. Co. v. National Surety Co. 134 Minn. 121, 158 N. W. 802; 6 Dunnell, Minn. Dig. (2 ed.) § 9107a-c. Moreover, it may and always does adjust its premium to the risk and measures the latter by the cost. This very case shows how well the surety is protected, for the premium on the bond increases automatically with the cost of the work. Finally, and in the interest of possible claimants, the statute itself (§ 9700) authorizes an "additional bond" in case of an increase in the contract price.

The result is that the order appealed from is affirmed except as to the claim involving defendant's contract for work on project No. 3-34. So far as that is involved, the order is reversed with directions for such proceedings below as will result in judgment for plaintiff for the amount of the additional premium accruing by reason of the increased cost resulting from the change in the design of the retaining wall.

So ordered.