AMERICAN DRUGGISTS INSURANCE,
Appellant,

v.

THOMPSON LUMBER COMPANY, et al., Respondents.

No. C1–83–1737.

Court of Appeals of Minnesota.

May 15, 1984.

Robert I. Lang, Lang, Pauly & Gregerson, Ltd., Minneapolis, for appellant.

LaVern A. Pritchard, Thompson & Klaverkamp, Minneapolis, for respondents.

Heard, considered and decided by SEDGWICK, P.J., and PARKER, Judge, and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

This is an appeal by a surety on a contractor's bond from the entry of summary judgment in favor of a subcontractor. The trial court applied the doctrine of collateral estoppel by judgment entered in favor of a fellow subcontractor. The dispute focuses upon whether the subcontractor's claim was timely filed and whether the amount of the claim was properly determined by the trial court. The surety contends that (1) the doctrine of collateral estoppel was improperly applied by the trial court; and (2) there were genuine issues of material fact which precluded summary judgment. In a cross appeal, the contractor alleges error for not being awarded its attorney's fees. The contractor also seeks attorney's fees for this appeal. We affirm in part, modify in part and remand to the trial court for consideration of attorney's fees.

## FACTS

The City of Shorewood entered into a contract with Zagar Construction Company for the construction of a city hall. Zagar obtained a contractor's bond from American Druggists' Insurance Company (ADI) in the amount of $66,089, the original contract price. ADI agreed as surety to "pay all persons who have contracts directly with" Zagar for labor or materials in the performance of the contract.

Zagar subcontracted part of the job to Berg Drywall, Inc., and Thompson Lumber Company. By mid-December 1979, Zagar owed Thompson Lumber almost $25,000 and Berg Drywall $5,600.

On March 10, 1980, the City of Shorewood approved payment of 90 percent of the amount then owing to Zagar. The remaining ten percent was withheld for "unknown contingencies." The City approved payment of the withheld ten percent on June 23, 1980, thereby accepting completion of the contract. With money still due, Thompson Lumber filed a written notice of claim on July 25, 1980; Berg Drywall filed its notice on July 31, 1980.

Both Berg Drywall and Thompson Lumber sued Zagar and ADI. Zagar eventually filed for bankruptcy. The Berg Drywall case was decided first; the trial court found that Berg Drywall's notice of claim was timely and entered judgment in its favor.

Thompson Lumber then moved for summary judgment. The trial court granted the motion. The court invoked collateral estoppel in ruling that ADI could not relitigate the issue of whether a timely claim was made, based on the earlier Berg Drywall decision. The court also found that no genuine issue of material fact existed and entered judgment in the amount of $38,530.21, plus costs, disbursements and interest.

### ISSUES

1. Did the trial court properly invoke collateral estoppel to bar ADI from relitigating whether Thompson Lumber's notice of claim was timely filed?

2. Were there any genuine issues of material fact which precluded the trial court from granting summary judgment for Thompson Lumber?

3. Did the trial court err in not granting Thompson Lumber attorney's fees for successfully maintaining its action?

4. Is Thompson Lumber entitled to its attorney's fees incurred as a result of this appeal?

### DISCUSSION

#### I

The contractor's bond is required for substantial public projects. Minn.Stat. § 574.26 (1982). It is designed "to protect laborers and material men who perform labor or furnish material for the execution of a public work to which the mechanic's lien statute does not apply." *Ceco Steel Products Corp. v. Tapager*, 208 Minn. 367, 370, 294 N.W. 210, 212 (1940), quoting *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 581 (Minn.1977). As a prerequisite to a suit on a contractor's bond, a claim must be filed "within 90 days after the completion of the contract and *acceptance* thereof by the proper public authorities." Minn.Stat. § 574.31 (1982) (emphasis added).

In the *Berg Drywall* case, the trial court established that the City accepted Zagar's performance on June 23, 1980. ADI urged

in that suit that the City accepted on March 10, 1980, thus barring any claims filed after June 10, 1980.

Here, ADI urges it was not collaterally estopped from relitigating the date of acceptance because the *Berg Drywall* case was subsequently appealed to the Minnesota Supreme Court and hence was not a final judgment.

■ Collateral estoppel precludes the relitigation of issues already litigated in a prior action. *Hauser v. Mealey*, 263 N.W.2d 803 (Minn.1978). In *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702 (Minn.1982), the Supreme Court articulated four factors necessary to invoke this doctrine:

1. Identical issue in prior suit;

2. Final judgment on merits;

3. Estopped party a party or in privity with party in prior suit; and

4. Estopped party given a full and fair opportunity to be heard on the adjudicated issue.

■ The only dispute is whether the *Berg Drywall* judgment is deemed final. This issue was essentially determined in *State ex rel. Spratt v. Spratt*, 150 Minn. 5, 184 N.W. 31 (1921), where the Minnesota Supreme Court stated that "an appeal with a supersedeas bond does not vacate or annul the judgment appealed from, and the matters determined by it remain res judicata until it is reversed." *See Wegge v. Wegge*, 252 Minn. 236, 89 N.W.2d 891 (1958); *Manemann v. West*, 218 Minn. 602, 17 N.W.2d 74 (1944); *Bolsta v. Bremer*, 212 Minn. 269, 3 N.W.2d 430 (1942). *See also Wilcox Trux, Inc. v. Rosenberger*, 169 Minn. 39, 209 N.W. 308 (1926) (perfection of appeal after final judgment does not affect the judgment as a bar).

■ ADI's contention that the *Berg Drywall* judgment is unclear and inconsistent about its grounds is without merit. The *Berg Drywall* decision clearly states that the City accepted on June 23, 1980.

II

ADI also contends there were genuine issues of material fact which precluded the trial court from granting summary judgment under Rule 56 of the Minnesota Rules of Civil Procedure.

■ In considering summary judgment, the nonmoving party must be given the benefit of that view of the evidence which is most favorable to him and is entitled to have all doubts and inferences resolved against the moving party. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981). Upon review, this court must determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

1. ADI argues the amount of the finance charges is subject to factual dispute. The finance charges were computed at 12 percent per annum and compounded, rendering a total finance charge of $13,536.89. ADI contends there never was a specific agreement between Thompson Lumber and Zagar authorizing the payment of interest. Further, it argues that under Minn.Stat. § 334.01 (1982), interest cannot be compounded.

■ The general rule is that liability for interest is purely a matter of contract, requiring a promise to pay it. *Tate v. Ballard*, 243 Minn. 353, 68 N.W.2d 261 (1954). *See Anderson v. Property Developers, Inc.*, 555 F.2d 648 (8th Cir.1977). However, an exception exists under the doctrine of accounts stated. An account stated is a manifestation of assent by a debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent. Restatement (2d) *Contracts*, § 282(1) (1981). *See Meagher v. Kavli*, 251 Minn. 477, 88 N.W.2d 871 (1958).

■ Thompson Lumber's monthly invoices clearly indicated interest would be charged, and Zagar, whose testimony was presented by deposition, admitted on cross examination that he made no complaint about Thompson's invoices. There is nothing in the record to show that Zagar ever objected to Thompson's finance charges on this job. Zagar's acquiescence in the charges results in the law implying a promise to pay those charges. *Id.*, 251 Minn. at 487, 88 N.W.2d at 879. As such, the trial court correctly concluded there was no genuine issue of material fact on this issue. However, the trial court erroneously allowed Thompson Lumber a compound rate of interest beginning with its May 28, 1980, invoices. Under Minn.Stat. § 334.01, interest cannot be compounded. The monthly invoices did not indicate interest was to be compounded; the compound amount thus cannot be allowed. The trial court should have allowed only $10,247.22 in simple interest (12 percent annual interest according to the invoices), not $13,536.89.

2. ADI also argues that a material fact question exists on whether any part of Thompson Lumber's claim relates to a new contract separate and apart from the original Zagar contract with the City. Zagar received a change order from the City adding a basement to the building. This increased Thompson Lumber's billings by about $13,000. ADI contends they should be relieved from any liability for this increase.

■ The statutes dealing with contractors' bonds are liberally construed. *Weyerhaeuser Co. v. Twin City Millwork Co.*, 291 Minn. 293, 191 N.W.2d 401 (1971). Minn.Stat. § 574.28 provides, "no assignment, modification, or change of the contract, or change in the work covered thereby, nor any extension of time for completion of the contract, shall release the sureties on the bond." This statute is consistent with the general rule in building contracts that

if the alterations are slight and trivial, the surety will not be released, even though not consenting, the decisions being sometimes based on the ground that such changes are incident to any building

operation and are contemplated by the parties.

A. Stearns, *The Law of Suretyship* 119 (1951). *See Massachusetts Bonding & Ins. Co. v. Thompson*, 88 F.2d 825 (8th Cir. 1937).

The controlling Minnesota case in this area is *National Surety Co. v. Erler*, 175 Minn. 14, 220 N.W. 543 (1928). There, a contractor agreed to perform 19 specific jobs (mostly moving structures from a right of way on a state highway), including constructing a retaining wall of cement blocks. A storm demolished much of the work; accordingly, under an "unclassified work order" a new wall was built at a cost in excess of the prior estimate. The Minnesota Supreme Court, in deciding that this was a mere modification or change under a predecessor statute of Minn.Stat. § 574.28, stated:

> However, the work actually done was to accomplish one of the 19 objects of the original contract and nothing more. The original and inadequate plan had to be abandoned from foundation up. The substitute work worked out under the unclassified work order was different only in method of construction and not in location, extent or purpose. It was not a new and different undertaking but fairly *within the scope of the contract* guaranteed by plaintiff under its bond. True there was a radical change of the original contract but yet it was no more than a change.

*Id.* at 20, 220 N.W. at 546 (emphasis supplied).

 The addition of the basement here was merely in furtherance of the original object of the contract. It was fairly within the scope of the contract and was not a radical change. The original contract contemplated that changes and modifications would occur, as evidenced by its pro-

visions for modifications and change orders. If such additional, but necessary, work is viewed as an additional contract, a new public bidding process would have been necessary under Minn.Stat. § 471.345 (1982). Public bidding for the basement addition would have caused a substantial delay in the progress of the work with foreseeable inefficiencies and spiralling costs to be passed on to the community. Thus, we agree with the trial court that this change was not a new and independent contract which releases the surety from liability for this additional amount. A surety can adjust its premium to the risk in case of increases in the contract price. Minn.Stat. § 574.26 allows the surety to request an additional bond from the contractor, but apparently this was never done. There is no merit to appellant's contention that a genuine issue of material fact existed on this issue.

### III

 Thompson Lumber contends the trial court erred in not awarding attorney's fees for successfully maintaining its action. The trial court found no basis, either contractual or statutory, for an award of attorney's fees. We disagree. "Section 574.26 provides for attorney's fees, in general terms, in cases involving contractor's bonds." *Barrett v. Hampe*, 237 Minn. 80, 89, 53 N.W.2d 803, 808 (1952).[1] This "was no doubt intended to spur up the payment of just claims by imposing upon the debtor some of the expenses which a creditor would incur in resorting to a suit on the bond." *Schutz v. Interstate Contracting Co.*, 196 Minn. 426, 265 N.W. 296 (1936).

The surety contract does not expressly provide for attorney's fees. However, a contractor's bond given pursuant to a statutory requirement must be construed in

---

1. 574.25 CONTRACTORS' BONDS.

No contract with * * * any municipal corporation * * * for the doing of any public work, shall be valid for any purpose, unless the contractor shall give bond * * * for saving the obligee harmless from all costs and charges that may accrue on account of the doing of the work

specified, and for the enforcing of the terms of the bond if action is brought on the bond, *including reasonable attorney's fees,* in any case where such action is successfully maintained and for the compliance with the laws appertaining thereto. (Emphasis supplied).

light of the statute and extended as contemplated by it. *Combs v. Jackson,* 69 Minn. 336, 337, 72 N.W. 565, 566 (1897). A contractor's bond cannot diminish the protection afforded by statute. *Nelson Roofing & Contracting, Inc. v. C.W. Moore Co.,* 310 Minn. 140, 245 N.W.2d 866 (1976). Thus, we remand this issue to the trial court to consider an appropriate award of reasonable attorney's fees.

 Thompson Lumber moved for an award of $1,536.75 in attorney's fees on this appeal. The motion was supported by an affidavit of counsel indicating the time spent and respective hourly billing rates of the attorneys who did the work; these are appropriate to the services performed. Minn.Stat. § 574.26 allows for attorney's fees "in any case where such action is successfully maintained and for the compliance with the laws appertaining thereto." This language is broad enough to include appeals to this court. *See Anda Construction Co. v. First Federal Savings & Loan Ass'n,* 349 N.W.2d 275 (Minn.Ct.App.1984).

## DECISION

The decision of the trial court granting summary judgment in favor of Thompson Lumber is affirmed. However, the award of $13,536.89 in interest must be modified to $10,247.22 because the interest cannot be compounded. The case is remanded to the trial court to consider attorney's fees in the trial court because attorney's fees are allowable for successfully maintaining an action on a contractor's bond. The requested attorney's fees on appeal of $1,536.75 are granted.

Affirmed in part, modified in part, and remanded for consideration of attorney's fees.